IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| C.R. FREEMAN, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. CIV-12-1390-D |
| | ) |
| PREMIUM NATURAL BEEF, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**O R D E R**

Before the Court is Plaintiffs' Motion to Remand [Doc. No. 8], which challenges on both jurisdictional and statutory grounds the removal of this action from state court. Plaintiffs challenge whether the Notice of Removal was timely filed, and whether their joinder of a nondiverse defendant precludes federal jurisdiction under 28 U.S.C. § 1332. The removing defendant has timely opposed the Motion, and Plaintiffs have replied. Thus, the Motion is at issue.

**Factual and Procedural Background**

Premium Natural Beef, LLC ("PNB") is an Oklahoma limited liability company comprised of Plaintiffs C.R. Freeman, Kirk Duff, and Todd Duff, and Defendant Meyer Natural Foods, LLC ("Meyer").[1] Meyer is currently the managing member under an amended limited liability company agreement dated May 19, 2011, which was executed with other agreements as part of a transaction in which Meyer purchased a majority share of PNB. Subsequent business dealings and a soured relationship between Plaintiffs and Meyer have spawned numerous disagreements and several court cases. This action was one of two filed on August 3, 2012, in the District Court of Kiowa County,

---

[1] Plaintiffs' pleadings state PNB is an Oklahoma limited liability company; Meyer alleges in the Notice of Removal that PNB is a Delaware limited liability company. Because the law under which PNB was formed is not pertinent to the issues presented, this disagreement need not be resolved.

Oklahoma; the second was brought by two other limited liability companies of which Plaintiffs are members, against Meyer, PNB, and a bank that holds a security interest in the subject matter.

Plaintiffs are individual citizens of Oklahoma. Meyer is a Delaware limited liability company comprised of two members, which are citizens of California and Delaware. Although diversity of citizenship exists between these parties, complete diversity is necessarily destroyed if Plaintiffs have properly joined PNB as a defendant. The parties agree that the citizenship of a limited liability company is determined by the citizenship of its members.[2]

It is undisputed that the state court petition initially filed in this case was not removable to federal court because it did not state an amount in controversy sufficient to satisfy the jurisdictional minimum of § 1332(a). Plaintiffs alleged in the original petition that Meyer had breach its contractual and fiduciary duties as the managing member of PNB under the amended limited liability company agreement (denominated, the "Operating Agreement") by failing to pay distributions in a timely manner and engaging in transactions prohibited by the Operating Agreement; Plaintiffs alleged this conduct had caused damages "in excess of $10,000.00." *See* Notice of Removal, Ex. 2 [Doc. No. 1-2], Petition ¶ 22. Plaintiffs also alleged they had not received accounting and financial information to which they were entitled under the Operating Agreement, and they asserted a claim

---

[2] Although the Tenth Circuit has not decided the issue, federal appellate courts have unanimously held that a limited liability company should not be treated like a corporation under 28 U.S.C. § 1332(c)(1), but like a limited partnership or other unincorporated association under *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990). *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008); *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009); *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006); *see also Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006); *General Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004); *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 828-29 (8th Cir. 2004); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004); *Handelsman v. Bedford Village Assocs. Ltd. P'ship*, 213 F.3d 48, 51 (2d Cir. 2000); *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998).

against Meyer and PNB for a full accounting "in order to determine the gravity of damages caused to Plaintiffs" by "Meyer's actions and inactions." *See id*., ¶ 23.

On September 14, 2012, after Defendants had answered the petition, Plaintiff filed a motion for leave to amend based on "information creating additional allegations." *See* Notice of Removal, Ex. 9 [Doc. No. 1-9], Pls.' Mot. Leave File Am. Pet. ¶ 3. Attached to the motion was a proposed pleading that, in addition to the original claims, sought rescission of the purchase transaction due to Meyer's alleged misrepresentation of material facts and fraudulent conduct and, alternatively, sought damages in excess of $75,000.00 and punitive damages.[3] This motion was the subject of a discussion between counsel and the presiding judge at a hearing on the second case, and Defendants' counsel stated he would not object to an amendment. However, no order authorizing the amendment was ever submitted or entered.

Instead, Plaintiffs filed on November 16, 2012, a second motion for leave to file an amended petition. This motion stated that events had occurred in the interim which would support additional claims, specifically, that PNB had suffered a substantial loss of business allegedly caused by Meyer's mismanagement. Plaintiffs submitted a newly proposed "First Amended Petition" as an attachment to the second motion. *See* Notice of Removal, Ex. 16 [Doc. No. 1-16], Pls.' Revised Mot. Leave File Am. Pet., Ex. A. This pleading was identical to the previously proposed amendment except it included an additional claim alleging Meyer had "grossly mismanaged the operations of PNB" and caused a decrease in value of PNB that Plaintiffs "believe exceeds several

---

[3] The claim of false representation was supported by allegations stating Meyer had received more than $4,000,000 as a result of its fraud, and that Plaintiffs' reputations had been damaged because they relayed Meyer's representation to a major customer. The claim of fraudulent conduct alleged that Meyer was unfairly competing with PNB and stealing its customers; no quantity of loss was alleged.

million dollars." *See id*., First Am. Pet. ¶¶ 49, 56. The second motion was granted without objection on December 7, 2012. Meyer filed its Notice of Removal in this Court on December 14, 2012.[4]

In removing the case to federal court based on diversity jurisdiction under 28 U.S.C. § 1332, Meyer has asserted that complete diversity of citizenship exists despite the presence of PNB, an Oklahoma defendant, because PNB may be disregarded as either an unnecessary or nominal party, or a party that was fraudulently joined to defeat federal jurisdiction.

Plaintiffs' Motion challenges these assertions. Plaintiffs contend PNB is a necessary party to this action because it owns the accounting records that will be needed to accomplish the full accounting they seek and, accordingly, no fraudulent joinder can be found. Plaintiffs further contend the removal in December, 2012, was untimely because Meyer was well aware, at the latest, by September 14, 2012, that more than $75,000 was at stake in the litigation. Plaintiffs point to settlement proposals that were made before and after the case was filed, discovery answers from which an amount of damages could be determined, and their first motion to amend the petition on September 14, 2012. Plaintiffs assert that Meyer should have removed the case within 30 days after first receiving a proposed amended pleading that stated a claim for damages above the jurisdictional amount. In addition to an order remanding the case, Plaintiffs seek an award of attorney fees and costs incurred as a result of Meyer's allegedly improper removal, pursuant to 28 U.S.C. § 1447(c).

In response, Meyer presents legal arguments and authorities regarding the nominal party doctrine and fraudulent joinder; it contends both are applicable to the First Amended Petition and undisputed facts. As to timeliness, Meyer argues that Plaintiffs first asserted a removable claim when their second motion to amend was granted. Meyer contends the first motion to amend did not

---

[4] In their arguments, the parties treat the First Amended Petition as the operative pleading, even though no signed document has been filed or served. Accordingly, the Court will do likewise.

trigger the 30-day deadline for removal because the motion was abandoned and never granted. Meyer also contends the settlement offers and discovery cited by Plaintiffs did not provide notice that the case had become removable because these papers concerned claims other than those asserted in Plaintiffs' original petition, which was the operative pleading until Plaintiffs obtained permission to amend.

In support of its contention that Plaintiffs have no real claim against PNB, Meyer points to provisions of the Operating Agreement that require Meyer, as the managing member, to prepare financial statements and reports for PNB and make distributions to members. Meyer contends the only claims that Plaintiffs are asserting against PNB, which seek damages for delayed distributions and an accounting, would be satisfied by Meyer and not PNB. Meyer also points to allegations in the Notice of Removal, which are supported by the declaration of Meyer's chief executive officer and copies of email messages, that show Plaintiffs' allegations regarding untimely distributions "are simply untrue." *See* Notice of Removal [Doc. No. 1], ¶ 29. Meyer notes that Plaintiffs make no mention of these allegations or evidence in their Motion, and rely solely on the fact that PNB owns the records needed to provide an accounting.

In reply, Plaintiffs provide additional legal arguments to support their position that PNB is a necessary, or even indispensable, party for the accounting claim. Plaintiffs contend PNB is the entity against whom a judgment would be entered if the requested accounting shows they are owed money for unpaid distributions. Plaintiffs also argue that PNB is the "subject matter" of this action and their accounting claim. *See* Pls.' Reply Br. [Doc. No. 17] at 4.[5]

---

[5] Plaintiffs argue that PNB is the subject of disputes between the parties in this and other pending cases and PNB is a party to written contracts at issue in the other cases. Plaintiffs do not explain why claims and contracts involved in other cases are pertinent to the issue of whether PNB is a proper party in this case.

**Subject Matter Jurisdiction**

A lack of complete diversity of citizenship is a jurisdictional issue to be addressed as a preliminary matter.  *See Albert v. Smith's Food & Drug Centers, Inc.*, 356 F.3d 1242, 1247 (10th Cir. 2004).  Meyer, as the removing defendant, bears the burden of establishing federal subject matter jurisdiction.  *See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001); *see also McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir. 2008).  Here, Meyer relies on two doctrines under which a named party may be ignored so that complete diversity is established.

Meyer first argues that PNB can be disregarded under the "nominal party" doctrine, which permits a federal court to "rest jurisdiction only upon the citizenship of the real parties to the controversy."  *See Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 461 (1980).  Although similar terminology is used in procedural rules such as Fed. R. Civ. P. 17(a), titled "Real Party in Interest," these rules "address party joinder, not federal-court subject matter jurisdiction."  *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 90 (2005).  No bright-line rules for determining who is a "nominal party" can be discerned from "decisions employing 'real party to the controversy' terminology in describing or explaining who counts and who can be discounted for diversity purposes."  *Id*. at 91.  In *Navarro*, for example, the Supreme Court determined that the "real parties" for jurisdictional purposes were the trustees of an express trust and that the citizenship of trust beneficiaries was immaterial.  Other instances in which the nominal party doctrine has been invoked are "cases in which a party was named to satisfy state pleading rules, *e.g.*, *McNutt ex rel. Leggett, Smith, & Lawrence v. Bland*, 2 How. 9, 14, 11 L. Ed. 159 (1844), or was joined only as designated performer of a ministerial act, *e.g.*, *Walden v. Skinner*, 101 U.S. 577, 589 (1880), or otherwise had no control of, impact on, or stake in the controversy, *e.g.*, *Wood v. Davis*, 18 How. 467, 469-470, 15 L. Ed. 460 (1856)."  *See Lincoln*, 546 U.S. at 92.

Meyer contends Plaintiffs' claims present a similar situation. Meyer argues that PNB's ownership of accounting records is a mere formality, and that its position is analogous to a situation where a mere stakeholder or depository of funds is treated as a nominal party. Focusing on the claims in which PNB is named in the First Amended Petition, Meyer argues that PNB will not be called to perform any action or pay any damages – even if Plaintiffs prove that PNB failed to make timely distributions or provide an accounting to Plaintiff – because Meyer is the party who allegedly caused Plaintiffs' injury and would be required to rectify the wrong.

Upon careful consideration, the Court finds Meyer's argument to be sound. To the extent PNB is a proper party to Plaintiffs' accounting claim, as argued in their briefs, its joinder is a mere formality because Meyer would be the one responsible under the Operating Agreement for actually providing the accounting. Also, to the extent any distributions were delayed, as alleged in the First Amended Petition, Meyer was the one responsible for failing to make them in a timely manner, and Meyer would be called upon to compensate Plaintiffs, either directly or through PNB, for any delay damages. Accordingly, the Court finds that PNB is a nominal defendant on the claims for which it is joined in the First Amended Petition.

In the Court's view, however, this finding does not end the jurisdictional inquiry. The First Amended Petition asserts claims against Meyer regarding breach of the Operating Agreement and breach of its fiduciary duties as managing member and, particularly, gross mismanagement that allegedly caused PNB to lose a key customer and millions of dollars in revenue. Plaintiffs seek both damages and rescission of the Operating Agreement, which would oust Meyer from membership in PNB and remove Meyer as the managing member. These claims do not belong uniquely to Plaintiffs, but are claims that could be brought by PNB, as discussed *infra*.

In a separate case pending before this Court, Meyer has sued Plaintiffs alleging, among other things, that they are the ones responsible for loss of the customer's contract and that Plaintiffs have engaged in a course of conduct designed to ruin PNB so they could deprive Meyer of the benefit of the contracts under which it purchased a controlling share of PNB. *See Meyer Natural Foods, LLC v. Freeman*, Case No. CIV-12-1329-D, Compl. ¶¶ 18, 21 (W.D. Okla. Nov. 30, 2012). Plaintiffs here (Defendants in that case) have moved to dismiss Meyer's action on the grounds that the claims asserted were compulsory counterclaims in state court litigation between the parties (including this case), and that PNB is an indispensable party to the action. The latter argument leads the Court to question: If PNB is a necessary party in Meyer's case regarding injury to PNB, may PNB also be a necessary party in this case, which includes a similar claim? The Court raises the issue *sua sponte* because the parties' arguments on this question are presented only in No. CIV-12-1329-D and not in this case. However, because the parties have already filed briefs on the issue in No. CIV-12-1329-D, the Court finds that further briefing by the parties is not needed.

### Necessary Party

PNB is a distinct legal entity that exists apart from its members. A limited liability company, or LLC, is a concept that permits members "to join together in an environment of private ordering to form and operate the enterprise under an LLC agreement with tax benefits akin to a partnership and limited liability akin to the corporate form." *Elf Atochem North America, Inc. v. Jaffari*, 727 A.2d 286, 287 (Del. 1999). "The derivative suit is a corporate concept grafted onto the limited liability company form." *Id*. at 293. Delaware law, which governs a dispute under the Operating Agreement involved here, authorizes the filing of a derivative action on behalf of an LLC whose managers either refuse or are unlikely to sue. *See* Del. Code tit. 6, § 18-1001; Notice of Removal, Ex. 20-5 [Doc. No. 1-25], Operating Agreement, § 12.14 (requiring Delaware law). The question

8

presented is whether the breach of fiduciary duty claims asserted against Meyer are direct or derivative claims.

In a diversity case, the question of whether an action is direct or derivative is determined by state law, and according to the Operating Agreement in this case, Delaware law controls. *See U.S. Cellular Inv. Co. v. Sw. Bell Mobile Sys., Inc*., 124 F.3d 180, 181 (10th Cir. 1997) (Baldock, J., dissenting); *see also Smith v. Waste Mgmt., Inc*., 407 F.3d 381, 384 (5th Cir. 2005). The Delaware Supreme Court has held that "whether a claim is derivative or direct depends solely upon two questions: '(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?'" *Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1265 (Del. 2012) (quoting *Tooley v. Donaldson, Lufkin, & Jenrette, Inc*., 845 A.2d 1031, 1033 (Del. 2004)); *see also Kramer v. W. Pac. Indus. Inc*., 546 A.2d 348, 352 (Del. 1988). In determining the nature of the alleged harm, "a court must look to the body of the complaint, not to the plaintiff's designation or stated intention." *Kramer*, 546 A.2d at 352 (internal quotation omitted).

In this case, the First Amended Complaint alleges harm to PNB as well as Plaintiffs. It claims that Meyer, in breach of contractual and fiduciary duties, unfairly competed with PNB for customers and diverted money to Meyer's affiliates, and that Meyer mismanaged PNB's operations to the point of losing its major customer and rendering the company "essentially worthless." *See* Notice of Removal, Ex. 16 [Doc. No. 1-16], Pls.' Revised Mot. Leave File Am. Pet., Ex. A, First Am. Pet. ¶ 55. The remedies sought for these claims are rescission of the Operating Agreement and damages. PNB would be entitled to receive any damages it suffered as a result of misconduct by Meyer, with Plaintiffs entitled to only their proportionate shares. If Plaintiffs are successful in

obtaining rescission of the Operating Agreement, Meyer would lose its membership share as well as its manager's position, and PNB would be restored to its prior formation.

In *Kroupa v. Garbus*, 583 F. Supp. 2d 949 (N.D. Ill. 2008), the district court considered whether claims for breach of fiduciary duty alleging mismanagement of an LLC and seeking removal of the LLC's manager were direct or derivative under Delaware law. The court concluded these were derivative claims because: a) the manager owed a fiduciary duty to the LLC, which was harmed by the alleged breach, and any monetary recovery would inure to the LLC rather than its members personally; and b) the LLC must be named as a party in a case seeking removal of a manager, pursuant to Del. Code, tit. 6, § 8-110(a). Other courts have found claims similar to the ones alleged in this case to be derivative. *See*, *e.g.*, *Bartfield v. Murphy*, 578 F. Supp. 2d 638, 647-48 (S.D.N.Y. 2008) (manager allegedly diverted business from LLC and misused management power). Therefore, the Court finds that at least some of the claims asserted against Meyer in the First Amended Petition are derivative in nature.

Courts have generally held that a corporation, limited partnership, or LLC on whose behalf derivative claims are brought is a necessary party to the action. *See Ross v. Bernhard*, 396 U.S. 531, 539 (1970) (corporation); *Hooper v. Wolfe*, 396 F.3d 744, 748 (6th Cir. 2005) (limited partnership); *HB General Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1190 (3rd Cir. 1996) (same); *Buckley v. Control Data Corp.*, 923 F.2d 96, 98 (8th Cir. 1991) (same); *U.S. Cellular*, 124 F.3d at 182 (same); *see also Kroupa*, 583 F. Supp. 2d at 953 (LLC); *Bartfield*, 578 F. Supp. 2d at 650 (same). Joinder is ordinarily required if feasible because, in this case, "[PNB] might be able to bring identical claims against [Meyer], or, alternatively, [PNB]'s claims might be extinguished in this action." *HB General*, 95 F.3d at 1190 (paraphrasing added). The cases cited by the parties address an additional question often presented in derivative actions, that is, whether the absent corporation,

10

partnership, or LLC is "indispensable," such that an inability to join the entity requires dismissal of the action pursuant to Fed. R. Civ. P. 19(b). In this case, however, PNB already is a named defendant, and the basis urged by Meyer for disregarding PNB is that it is a nominal party or fraudulently joined.[6]

By definition, a necessary party cannot be a nominal defendant, that is, one with no stake in the litigation. *See Kroupa*, 583 F. Supp. 2d at 953-54; *Khoury v. Oppenheimer*, 540 F. Supp. 2d 737, 738-39 (D. Del. 1982); *see also Knop v. Mackall*, 645 F.3d 381, 383 (D.C. Cir. 2011). Similarly, an entity on whose behalf a derivative action is brought cannot, by definition, be fraudulently joined. Under the fraudulent joiner doctrine, a federal court may disregard the presence of a nondiverse defendant against whom no cause of action is stated or none actually exists. *See Dodd v. Fawcett Pub., Inc.*, 329 F.2d 82, 85 (10th Cir. 1964). When an action includes a derivative claim on behalf of an LLC, fraudulent joinder of the LLC cannot be found. *See Bischoff v. Boar's Head Provisions Co.*, 436 F. Supp. 2d 626, 635 (S.D.N.Y. 2006).

For these reasons, the Court finds that Meyer has failed to establish the existence of diversity jurisdiction and this case must be remanded pursuant to 28 U.S.C. § 1447(c), for lack of jurisdiction.

## Attorney Fees

If remand is ordered, Plaintiffs request an award of attorney fees under § 1447(c). Plaintiffs contend the Notice of Removal was filed for improper purposes to avoid state court rulings, and that it "provides no legitimate or proper basis for removal." *See* Pls.' Mot. Remand [Doc. No. 8] at 25. Meyer, of course, disagrees with Plaintiffs' characterization of its actions and the removal notice.

---

[6] In a derivative action, the corporation or entity allegedly injured by a breach of fiduciary duties is generally aligned as a defendant. *See Symes v. Harris*, 472 F.3d 754, 761 (10th Cir. 2006).

An "award of fees under § 1447(c) is left to the wide discretion of the district court." *Martin v. Franklin Capital Corp.*, 393 F.3d 1143, 1146-47 (10th Cir. 2004). A plaintiff is not entitled to an award simply because removal is determined to be improper, and an award may properly be denied "where the defendant had a fair basis for removing the case." *Id*. at 1147 (internal quotation omitted). Under the circumstances of this case, the Court finds an award of fees to be unwarranted.

## Conclusion

For these reasons, the Court concludes that this case was improperly removed to federal court and that it must be remanded for lack of jurisdiction.

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Remand [Doc. No. 8] is GRANTED. This case is remanded to the District Court of Kiowa County, Oklahoma, where it began as Case No. CJ-2012-29.

IT IS SO ORDERED this 26th day of September, 2013.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE